UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
COLUMBUS DIVISION

THE BUCKEYE INSTITUTE,

    Plaintiff,

v.

INTERNAL REVENUE SERVICE; DOUGLAS O'DONNELL, in his official capacity as Acting Commissioner of Internal Revenue; UNITED STATES DEPARTMENT OF THE TREASURY; and JANET YELLEN, in her official capacity as Secretary of the Treasury,

    Defendants.

Civil Action No. _____

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

INTRODUCTION

1. The First Amendment requires the government to strike a balance between its purported need for people's sensitive information and the risk to those people's associational privacy interests should their information, once harvested, be misused by the government or fall into the wrong hands. The government may not demand sensitive private information for which it has no real need—and which has a habit of being pilfered.

2. Unfortunately, the IRS has proven unable to secure its filers' secrets. Tax returns whose privacy is nominally protected by federal law are now fodder for political websites. And the IRS has a history of politicized enforcement. Donors to political advocacy groups have taken notice. Fearing retribution for their political

activity, people have become more reluctant to donate to organizations that are required to divulge their associations to the IRS—and, by extension, to their political enemies who can access IRS data. This dynamic impacts Plaintiff Buckeye Institute, which is in the business of advocating on a variety of controversial political and social issues, and whose donors have been more reticent to support Buckeye for fear of retaliation by the IRS or by those who can access its records.

3. The Supreme Court understands the problem. Last year, it barred California from collecting unredacted copies of IRS's Schedule B, the forms on which nonprofits divulge their top contributors, given that state's limited need for that information and its poor data privacy record. *Americans for Prosperity Found.* v. *Bonta*, 141 S. Ct. 2373 (2021).

4. The IRS, too, understands the problem. In 2020, it eliminated the Schedule B requirement for some tax-exempt organizations which it had previously imposed by regulation, stating that the risk of inadvertent disclosure of confidential taxpayer information and its ability to obtain the information as needed through other means rendered the regulation unnecessary. Guidance Under Section 6033 Regarding the Reporting Requirements of Exempt Organizations, 85 Fed. Reg. 103,31959 (May 28, 2020) (codified at 26 C.F.R. 1).

5. But the Schedule B requirement persists as a statutory matter for organizations such as Buckeye, which are exempt from taxation under 26 U.S.C. § 501(c)(3). *See* 26 U.S.C. § 6033(b)(5). This compelled disclosure regime, disconnected from any identifiable need for the information it gathers and then leaves at risk of

public disclosure, violates the First Amendment rights of association and assembly of Buckeye and its supporters, both on its face and as applied. This Court should follow the Supreme Court's lead, and that of the IRS itself, in ending the Schedule B requirement for Section 501(c)(3) organizations.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case presents questions of federal law.

7. This Court is the proper venue pursuant to 28 U.S.C. §§ 1391(b)(2) and (e) because a substantial part of the events or omissions giving rise to the claims occurred and are occurring in this District, Buckeye resides in this District, and no real property is involved in this action.

## THE PARTIES

8. Buckeye is a nonpartisan, nonprofit, tax-exempt organization, organized under Ohio law, maintaining its headquarters in Columbus, Ohio. Buckeye seeks to promote limited and effective government and individual freedom through policy research and advocacy, often serving as a government watchdog and litigating to defend constitutional rights.

9. The IRS is the chief tax collection agency of the United States and is a division of the United States Department of the Treasury.

10. Acting Commissioner Douglas O'Donnell serves as the head of the IRS in Washington D.C., and enforces the law challenged in this action. He is sued in his official capacity.

11. The United States Department of the Treasury is a cabinet level agency of the United States government, charged with enforcing the United States Tax Code.

12. Janet Yellen, is the Secretary of the Treasury, and is responsible for enforcement of the statute challenged in this action. She is sued in her official capacity.

FACTUAL BACKGROUND

*The Regulatory Scheme*

13. The Internal Revenue Code ("I.R.C.") is published at Title 26 of the United States Code. The IRS is responsible for the I.R.C.'s administration and enforcement, as well as the enforcement of other rules, regulations, policies, procedures, and practices it promulgates thereunder.

14. 26 U.S.C. § 501(c) provides that various types of organizations are exempt from taxation. Buckeye is exempt from taxation under Section 501(c)(3).

15. Pursuant to 26 U.S.C. § 6033(b), "Every organization described in section 501(c)(3) . . . shall furnish annually information, at such time and in such manner as the [Treasury] Secretary may by forms or regulations prescribe, setting forth . . . the total of the contributions and gifts received by it during the year, and the names and addresses of all substantial contributors."

16. 26 U.S.C. § 507(d)(2)(A) defines a substantial contributor as any person who contributes an aggregate amount of more than $5,000 in the tax year

being reported, "if such amount is more than 2 percent of the total contributions" received by the organization.

17. Implementing Section 6033(b), the IRS requires that Section 501(c)(3) organizations like Buckeye file annually a Form 990, "Return of Organization Exempt From Income Tax" ("Form 990").

18. Schedule B, "Schedule of Contributors," ("Schedule B") to Form 990 requires that Section 501(c)(3) organizations report, *inter alia*, the names and addresses of all persons who contribute the greater of $5,000 or 2 percent of the total contributions received by the organization during the tax year. Internal Revenue Serv., U.S. Dep't of the Treasury, OBN No. 1545-0047, Schedule of Contributors (2021), https://www.irs.gov/pub/irs-pdf/f990ezb.pdf.

19. The IRS may seek civil penalties from any tax-exempt organization for failing to include complete or correct information on its return, including Schedule B to Form 990. 26 U.S.C. § 6652(c)(1). Such penalties can amount to $10,000 or 5% of the organization's gross receipts for the year. *Id.* § 6652(c)(1)(A).

20. The IRS makes Schedule B filings of Section 501(c)(3) organizations available for public inspection upon request. 26 U.S.C. § 6104(d)(1). However, the IRS is required to keep the names and addresses of contributors confidential, *see id.* § 6104(d)(3)(A), and thus it must redact such information before publicly producing any Schedule B.

21. Notwithstanding Section 6104(d)(3)(A)'s confidentiality requirement, the IRS has, either through hacking, inadvertence, or leaks by IRS employees,

released various organizations' Schedule B contributor information on numerous occasions. In fact, as discussed further, *infra*, the IRS has conceded that it has difficulty maintaining the confidentiality of information provided on Schedule B.

*The IRS Abandons the Schedule B Requirements for Some Nonprofits*

22. Although Section 6033(b) imposed the substantial contributor disclosure requirement on Section 501(c)(3) organizations, no statute imposed this requirement on other exempt organizations. In 1971, the IRS extended the contributor disclosure requirement to all exempt organizations through regulations governing the contents of Form 990. *See* Guidance Under Section 6033 Regarding the Reporting Requirements of Exempt Organizations, 85 Fed. Reg. at 103,31962.

23. In May 2020, the Department of the Treasury promulgated a regulation eliminating the requirement that Section 501(c) organizations other than those governed by Section 501(c)(3) list the names and addresses of substantial contributors on Schedule B. *Id.* at 103,31966.

24. The May 2020 regulation's preamble stated that "for the specific purpose of evaluating possible private benefit or inurement or other potential issues relating to qualification for exemption, the IRS can obtain sufficient information from other elements of the Form 990 or Form 990-EZ and can obtain the names and addresses of substantial contributors along with other information, upon examination as needed." *Id.* at 103,31963. The preamble stated further that eliminating the requirement that contributors' names be listed reduced the risk of

6

"inadvertent disclosure," and thus protected against "possible reprisals (such as harassment, threats of violence, or economic retribution)." *Id.*

<em>The IRS's Failure to Maintain the Confidentiality<br>of Tax Filings, Including Form 990</em>

25. In preparing Revenue Procedure 2018-38, the IRS stated that it was aware of at least 14 unauthorized disclosures of Form 990 information since 2010. N.J. Office of the Attorney Gen. et al., Comment Letter on Guidance Under Section 6033 Regarding the Reporting Requirements of Exempt Organizations (Dec. 9, 2019), https://tinyurl.com/2m4dsm2z.

26. In June 2021, the ProPublica organization demonstrated the insecurity of taxpayer data held by the IRS by publishing private income and tax payment information on its website. Paul Kiel et al., *America's Highest Earners and Their Taxes Revealed*, ProPublica (April 13, 2022), https://tinyurl.com/ProPublicaTaxes. That information remains available there as of December 2, 2022.  Upon information and belief, neither the IRS nor any other federal agency has made any progress in determining the source(s) of the security breach, or whether the breach is ongoing.

27. A December 14, 2021, Inspector General report concluded that until the IRS takes steps to improve its IT security program deficiencies and fully implements all security program components in compliance with statutory standards for information security, taxpayer data will remain vulnerable to inappropriate and undetected use, modification, or disclosure. *See* Treasury Inspector Gen. for Tax Admin., U.S. Dep't of the Treasury, Report No. 2022-20-005,

Annual Assessment of the IRS's Information Technology Program for Fiscal Year 2021 (Dec. 14, 2021), https://tinyurl.com/2pp2m9z4.

28.     In September 2022 the IRS disclosed that in August 2022 it "accidentally posted [private] data from" 990-T forms.  *See* Isaac O'Bannon, *IRS Exposes Confidential Data on 120,000 Taxpayers on Open Website*, CPA Practice Advisor, (Sep. 02, 2022), https://tinyurl.com/3pjzwxud. The information was available on the IRS's website "for about a year." Juliana Kim, *The IRS Says it Mistakenly Made Public Data for About 120,000 Taxpayers*, NPR, (Sept. 04, 2022), https://tinyurl.com/238zupsb.

*The IRS's Chilling of the Association and Assembly Rights*
*Of Buckeye and Its Supporters*

29.     To further its mission, Buckeye relies on financial and other support from individuals, corporations, and foundations that share its commitment to individual liberty, free enterprise, personal responsibility, and limited government.

30.     Like all groups that advocate positions on controversial social issues, as well as supporters of such groups, Buckeye and its supporters prize their First Amendment freedom to associate and assemble privately. Their exercise of these rights to associate with each other in fulfilling social, political, and ideological goals would be significantly damaged if they could not maintain the privacy of their relationships, as Buckeye's supporters would risk retribution from some who oppose its mission.

8

31. Buckeye's contributors are more reluctant to support it, as they fear reprisal from the IRS and others if the IRS misuses information showing their support of Buckeye, or if the IRS fails to secure such data.

32. Buckeye has experienced this chilling effect firsthand. In 2013, shortly after the Ohio General Assembly relied upon Buckeye's arguments to reject expansion of the federal Medicaid program, Buckeye learned that it would be audited by the Cincinnati office of the IRS.

33. Fearing that this audit was politically motivated retaliation against Buckeye, contributors expressed concern that if their names appeared on Buckeye's Schedule B or other records provided to the IRS, they would also be subjected to retaliatory audits. To avoid potential retribution based on their association with Buckeye, numerous individuals began opting to make smaller, anonymous donations and foregoing a donation receipt, as well as their tax deduction.

34. Upon information and belief, compelled disclosure of Buckeye's substantial contributors continues to chill privacy-conscious supporters' contributions to the organization.

35. Contributors' decisions to stop giving to Buckeye, or to give Buckeye smaller contributions than they otherwise would in order to avoid reporting to the IRS, effectively limits Buckeye's ability to speak, associate, and assemble with like-minded citizens.

COUNT ONE
RIGHTS OF ASSOCIATION AND ASSEMBLY, U.S. CONST. AMEND. I
28 U.S.C. § 2201, ET SEQ.

36. Buckeye re-alleges and incorporates by reference paragraphs 1 through 35 of this Complaint as though fully set forth below.

37. The Declaratory Judgment Act, 28 U.S.C. § 2201(a) permits a plaintiff to challenge the constitutionality of a statute that is threatened to be enforced without the need to show damages or the imminent threat of prosecution. *See Medimmune, Inc.* v. *Genetech, Inc.*, 549 U.S. 118, 129 (2007).

38. By compelling the disclosure of Buckeye's contributors, Defendants unlawfully and substantially deprive Buckeye and its supporters of the free association and assembly rights secured by the First Amendment to the United States Constitution.

39. Section 6033(b)(5)'s compelled disclosure regime is not substantially related to any sufficiently important government interest. No substantial relation exists between the wholesale disclosure of substantial donors through Schedule B and the government's interest in enforcing compliance with the tax code. Moreover, the government has readily available, more narrowly tailored alternatives to upfront collection of all names and addresses of substantial contributors.

40. The compelled disclosure of Buckeye's contributors on Schedule B does not survive exacting scrutiny.

41. The compelled disclosure of Buckeye's contributors on Schedule B is unconstitutional under the First Amendment, both facially and as applied against Buckeye.

42. Buckeye is entitled to a declaratory judgment and injunctive relief prohibiting the IRS from collecting the names and addresses of its contributors pursuant to Section 6033(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered in its favor and against Defendants as follows:

a. A declaration that compelling disclosure of contributor names and addresses pursuant to 26 U.S.C. § 6033(b) violates the First Amendment, both on its face and as applied to Buckeye;

b. Consistent with such declaration, preliminary and permanent injunctive relief barring Defendants from compelling Buckeye to disclose contributor names and addresses pursuant to Section 6033(b);

c. Costs of suit;

d. Attorney fees and costs pursuant to 28 U.S.C. § 2412 or any other applicable authority; and

e. Any other further relief as the Court may deem just and proper.

Dated: December 5, 2022

Alan Gura*
INSTITUTE FOR FREE SPEECH
1150 Connecticut Avenue, N.W.
Suite 801
Washington, DC 20036
202.301.3300
agura@ifs.org
*Admission pro hac vice pending

Respectfully submitted,

*/s/ Jay R. Carson*
Jay R. Carson (Ohio 0068526)
  Trial Attorney
Robert Alt (Ohio 0091753)
David C. Tryon (Ohio 0028954)
THE BUCKEYE INSTITUTE
88 East Broad Street, Suite 1300
Columbus, OH 43215
614.224.4422
j.carson@buckeyeinstitute.org
d.tryon@buckeyeinstitute.org
robert@buckeyeinstitute.org

Attorneys for Plaintiff