UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
COLUMBUS DIVISION

THE BUCKEYE INSTITUTE,

     *Plaintiff,*

        v.

INTERNAL REVENUE SERVICE;
DANIEL WERFEL, in his official
capacity as Commissioner of Internal
Revenue; UNITED STATES
DEPARTMENT OF THE TREASURY;
and JANET YELLEN, in her official
capacity as Secretary of the Treasury,

     *Defendants.*

No. 2:22-cv-4297-MHW-EPD

The Hon. Michael H. Watson,
U.S.D.J.

The Hon. Elizabeth P. Deavers,
U.S.M.J.

<br>

## **<u>DEFENDANTS' MOTION TO DISMISS</u>**

## **INTRODUCTION**

Congress created an opt-in regime under which organizations that engage in charitable activities can receive preferential tax treatment. Organizations that qualify are exempt from the general income tax, and contributors to those organizations can receive a tax deduction for their contributions. In return, Congress has imposed certain limits on the activities of those organizations and required them to report certain information, including the names and addresses of their substantial contributors.

Plaintiff, the Buckeye Institute, wants to enjoy tax-exempt status and wants its donors to receive tax deductions, but it asks this Court to strike down the requirement that it report the identities of its substantial contributors to the IRS.

Buckeye lacks standing to bring this action. Buckeye's alleged injury-in-fact – that its contributors fear retaliation if their identities are disclosed and so have reduced their contributions – is too attenuated and too speculative to provide Article III standing, and it is not fairly traceable to the statute it seeks to have declared unconstitutional. Therefore, this case should be dismissed.[1]

Regardless, Buckeye has failed to state a claim. There is no basis in the law for Buckeye to demand the benefits that Congress provided while avoiding the conditions that Congress placed on those benefits. Buckeye opted in to the regime

---

[1] This motion is filed by the United States of America, the real interested party, on behalf of all defendants. The Complaint caption identifies Douglas O'Donnell as Acting Commissioner of the IRS, but Daniel Werfel has since been confirmed as IRS Commissioner. This memorandum bears a revised caption in accordance with Rule 25(d) of the Federal Rules of Civil Procedure.

in order to receive preferential tax treatment; it must comply with the reasonable conditions Congress put on the receipt of that treatment. If Buckeye did not want to comply with those conditions, its remedy was to decline the offered benefit, not to seek judicial reformation of the law. This case should be dismissed.

## BACKGROUND

### 1. Tax benefits and rules applicable to § 501(c)(3) organizations

Ordinarily, a corporation that earns income is subject to tax on that income, 26 U.S.C. § 11, while those who donate money to support a corporation are not entitled to deductions for those donations. However, Congress has provided a special opt-in tax regime – the § 501 tax exemption – for corporations and certain other entities that meet specific criteria and agree to comply with applicable requirements.

While various types of organizations can qualify for tax benefits under § 501, there are two categories relevant to this case: § 501(c)(3) and § 501(c)(4). To qualify for § 501(c)(3) status, an organization must be organized and operated exclusively for charitable or other exempt purposes as specified in that statute and must not distribute net earnings to its shareholders or other individuals. 26 U.S.C. § 501(c)(3). The organization must also forgo its rights to participate in political campaigns or engage in substantial lobbying activities, with limited exceptions. *Id.* Significantly, an organization generally must elect to be treated as a § 501(c)(3) organization and must apply to the IRS for recognition of that status. *Id.* § 508(a).

In addition, the organization must comply with certain reporting requirements: Annually, a § 501(c)(3) organization generally must report, among

other information, its gross income, expenses, and disbursements; its balance sheet; the identities of its highly paid employees and their salaries; and the total contributions it received and the identities of its substantial contributors. *Id.* § 6033(b).[2] It is this last requirement, the substantial-contributor reporting requirement (found in § 6033(b)(5)), that is at issue in this case.

By contrast, the requirements applicable to § 501(c)(4) organizations are more flexible in certain respects. To qualify under § 501(c)(4), an organization must not be organized for profit and must be operated exclusively for the promotion of social welfare. A § 501(c)(4) organization is not prohibited from conducting substantial activities to influence legislation, and may engage in limited efforts to influence political elections. In addition, § 501(c)(4) organizations are not subject to the annual substantial-contributor reporting requirement.[3]

Section 501(c)(3) status comes with an additional tax benefit: Contributors to § 501(c)(3) organizations generally are eligible for a charitable contribution deduction for their contributions on their individual tax returns. 26 U.S.C. § 170(a). Contributors to § 501(c)(4) organizations are not. Thus, because Buckeye is a § 501(c)(3) organization, its contributors are eligible to receive a tax deduction for their contributions, and Buckeye must report the names and addresses of substantial contributors to the IRS. In contrast, donors to an organization

---

[2] These requirements do not apply to certain types of entities, such as churches. 26 U.S.C. § 6033(a)(3).

[3] A prior regulation required § 501(c)(4) organizations to report substantial contributors annually as well, but the regulation is no longer in force. *See* 85 FR 31959-01 (May 28, 2020).

described in § 501(c)(4) are not permitted a charitable contribution deduction, but the organization is not subject to an annual substantial-contributor reporting requirement. As discussed below, Buckeye could provide its contributors with an avenue to donate without triggering the substantial-contributor reporting requirement by creating a § 501(c)(4) organization (albeit no tax deduction for contributions to that entity would be available).

Section 501(c)(3) tax-exempt status is opt-in, 26 U.S.C. § 508(a); an organization need not apply for § 501(c)(3) status, in which case it would be subject to the same tax rules as apply to any other entity, and it would not be subject to the restrictions on lobbying and political activities applicable to § 501(c)(3) organizations or to the substantial-contributor reporting requirement. Similarly, an organization that qualifies may avoid some of those restrictions and requirements, including the substantial-contributor reporting requirement, by seeking § 501(c)(4) status rather than § 501(c)(3) status.

### 2. The § 6033(b)(5) substantial-contributor reporting requirement

Prior to 1969, § 501(c)(3) organizations were not required to disclose their substantial contributors to the IRS. The Tax Reform Act of 1969 amended § 6033 to require reporting of substantial contributors. Pub. L. 91-172, § 101(d)(1), (2). The House Report to the Act observed: "The primary purpose of these requirements is to provide the Internal Revenue Service with information needed to enforce the tax laws. The experience of these past two decades has indicated to your committee that more information is needed, on a more current basis, from more organizations . . . ." H.R. Rep. No. 91-413, at 36. The requirement has been part of

the statute since that time. The IRS has implemented the statute by requiring annual reporting of the names and addresses of substantial contributors on Schedule B to IRS Form 990. 26 C.F.R. § 1.6033-2(a). For organizations with broad public support, such as Buckeye, the regulations require that they report only contributors who contribute 2% or more of the organization's total donations, but only if the total amount of such contributions exceeds $5,000. *Id.* § 1.6033-2(a)(2)(iii)(A).[4]

Federal law prohibits the IRS from disclosing contributor identity information, with limited exceptions. 26 U.S.C. §§ 6103(a), 6104(b). Improper disclosure can give rise to criminal penalties against an individual and a civil cause of action against the government. *Id.* §§ 7213, 7431.

### 3. The Buckeye Institute

According to the Complaint, Buckeye is a § 501(c)(3) organization. Compl. ¶ 14. Buckeye thus receives the tax benefits available to § 501(c)(3) entities, including, generally, exemption from the income tax and the ability to receive tax-deductible contributions, and it is subject to the rules and restrictions applicable to § 501(c)(3) organizations, including the substantial-contributor reporting requirement.

Buckeye alleges that it is supported in its charitable endeavors by contributions from individuals who fear reprisal from the IRS and from third

---

[4] Buckeye's most recent publicly disclosed Form 990, for 2019, states that it received $2,681,174 in contributions, https://perma.cc/K6KX-UP3C, meaning that in that year, Buckeye was required to disclose only the identities of those contributors who donated $53,623 or more.

parties if their identities became known. *Id.* ¶¶ 29-31. Buckeye alleges only a fear of reprisal – it does not allege that it or its supporters face any actual material risk of reprisal. *Id.* Similarly, Buckeye alleges that its contributors fear the possibility that contributor information could be improperly disclosed and that that disclosure could lead to reprisal from third parties, *id.*, but it does not allege that there is an actual material risk of improper disclosure leading to reprisal. Buckeye alleges that this fear has led contributors to stop giving to Buckeye or to reduce their contributions. *Id.* ¶¶ 33-35.

Buckeye thus asserts that because its contributors' fears of reprisal result in a chilling effect on their contributions to Buckeye, the substantial-contributor reporting requirement infringes Buckeye's freedom of association. Accordingly, Buckeye filed this case challenging the substantial-contributor reporting requirement. Significantly, Buckeye does not ask this Court to invalidate the § 501(c) tax exemption; rather, Buckeye asks the Court to rewrite the rules applicable to § 501(c)(3) organizations so that Buckeye and its contributors would still receive the special tax treatment that accompanies Buckeye's § 501(c)(3) status, including the deductibility of contributions under § 170, but Buckeye would not have to comply with the conditions that Congress placed on that status.

## <u>ANALYSIS</u>

### I. **Buckeye lacks standing to challenge the substantial-contributor reporting requirement because it has failed to allege any cognizable harm.**

The Complaint should be dismissed because Buckeye has failed to allege an injury-in-fact sufficient to demonstrate Article III standing. Buckeye's alleged harm

– that its donors are reluctant to contribute because "they fear reprisal from the IRS and others if the IRS misuses information showing their support of Buckeye, or if the IRS fails to secure such data" (Compl. ¶ 31) – is too speculative and too attenuated to support standing to challenge the statute.

For a court to reach the merits of a case, the plaintiff must first demonstrate standing. *Online Merchants Guild v. Cameron*, 995 F.3d 540, 547 (6th Cir. 2021). "There are three elements to standing. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 861 (6th Cir. 2020) (cleaned up). The "standing inquiry has been especially rigorous when reaching the merits of the dispute would force us to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (internal quotation marks and citation omitted).

Buckeye lacks standing to challenge the constitutionality of § 6033(b)(5) because the statute does not cause Buckeye any direct harm and because the indirect harms that Buckeye identifies are too speculative and too attenuated to provide it with standing. This case should therefore be dismissed under Rule 12(b)(1). *See Primus Grp. v. Smith & Wesson Corp.*, 844 F. App'x 824, 827 (6th Cir. 2021) (holding that dismissal under Rule 12(b)(1) is appropriate where plaintiff fails to plead an injury in fact).[5]

---

[5] Buckeye's Complaint asserts injury to Buckeye itself, not on behalf of its members. In other words, Buckeye does not rely on a theory of associational standing. To

### A. Buckeye's theory of harm depends on the actions of independent third persons not before this Court.

Buckeye's theory of harm is that the § 6033(b)(5) substantial-contributor reporting requirement leads to a chilling effect on potential supporters, causing them to reduce their contributions. The Complaint does not allege any direct harm to Buckeye arising from § 6033(b)(5). Rather, the alleged harm results from the independent decisions of Buckeye's contributors, who are not parties to this case.

But courts have repeatedly rejected standing theories that depend on independent third-party decisions. As the Sixth Circuit has observed: "Many cases thus hold that a plaintiff failed to establish that an injury was traceable to a defendant when the injury would arise only if some third party decided to take the action triggering the injury." *Assoc. of Am. Phys. & Surgeons v. U.S. F.D.A.*, 13 F.4th 531, 546 (6th Cir. 2021) (citing *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-43 (1976); *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 344-45 (6th Cir. 2016); *Ammex, Inc. v. United States*, 367 F.3d 530, 533-34 (6th Cir. 2004)). The "central problem" is that the theory "rests on pure guesswork about the decisions of parties not before the court." *Id.* (citing *Amnesty Int'l*, 568 U.S. at 413).

---

establish associational standing, "an organization must identify a member who has suffered (or is about to suffer) a concrete and particularized injury from the defendant's conduct . . . ." *Weiser v. Benson*, 48 F.4th 617, 624 n.4 (6th Cir. 2022) (cleaned up). While Buckeye's Complaint does allege that the substantial-contributor reporting requirement infringes on the First Amendment rights of it "and its supporters," Compl. ¶ 38, it does not identify any individual member whose First Amendment rights would be infringed, and thus does not allege associational standing.

Buckeye's theory has the same defect. The harm it alleges, reduced contributions, materializes only if third parties not before this Court independently choose to reduce their contributions in response to § 6033(b)(5). This theory of harm, like that in *Association of American Physicians*, is pure guesswork about the actions of third parties. Plaintiff's conjectures about how the statute influences third-party donors seem particularly suspect given that the provision allegedly alarming those donors has been in effect for 54 years.

**B. Subjective chill is not a cognizable harm.**

Buckeye's Complaint also fails to identify an injury-in-fact because allegations of subjective chill, without more, do not constitute a cognizable harm. The Supreme Court in *Laird v. Tatum*, 408 U.S. 1 (1972), held that subjective chill that arises from a government information gathering program is not a sufficient injury-in-fact to support standing. That case involved a challenge to a U.S. Army domestic surveillance program. At issue was "whether the jurisdiction of a federal court may be invoked by a complainant who alleges that the exercise of his First Amendment rights is being chilled by the mere existence, without more, of a governmental investigative and data-gathering activity that is alleged to be broader in scope than is reasonably necessary for the accomplishment of a valid governmental purpose." *Id.* at 10.

The Supreme Court held that the subjective chilling effect of government information gathering does not constitute a cognizable harm. "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm; the federal courts established

pursuant to Article III of the Constitution do not render advisory opinions." *Id.* at 13-14 (internal quotation marks and citation omitted).

In the same way, Buckeye suffers no cognizable harm due to its contributors' generalized fear of retaliation. Even accepting Buckeye's allegation as true that its supporters subjectively fear retaliation, and that their contributions are chilled as a result of that fear, this fear does not rise to the level of an injury-in-fact absent an allegation of a material risk of actual retaliation. Because Buckeye's Complaint does not make any such allegation, it does not allege injury-in-fact. *Cf. United States v. Judicial Watch, Inc.*, 371 F.3d 824, 832-33 (D.C. Cir. 2004) ("Although Mr. Klayman claims '[s]upporters who are potential donors frequently ask . . . whether they will be audited if they make a donation,' a general fear of the IRS is insufficient to establish that speech will be chilled.") (citing *United States v. Norcutt*, 680 F.2d 54, 56 (8th Cir. 1982)).

### C. Because Buckeye has not alleged a material risk of retaliation, steps taken by donors to avoid retaliation are self-inflicted and cannot provide a basis for standing.

If an identified harm does not itself constitute an injury-in-fact, then costs incurred in response to that harm similarly do not constitute an injury-in-fact. In *Amnesty International*, the Supreme Court considered a challenge to a statute permitting the government to conduct surveillance of foreign communications. The Supreme Court first rejected Plaintiffs' primary argument that it was likely that their communications would be intercepted under the statute, finding that argument too attenuated and too speculative. *Amnesty Int'l*, 568 U.S. at 410-11.

Crucially, the Supreme Court then rejected a secondary standing argument: The plaintiffs had asserted that they suffered ongoing harm because they had to take "costly and burdensome measures" to keep their communications confidential. *Id.* at 415. But because this harm was "not certainly impending," costs incurred to respond to it were not cognizable. "In other words, respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id.* at 416 (citations omitted).

This holding bars Buckeye from proceeding. Because Buckeye has not alleged that its supporters face impending retaliation, those donors' decisions to reduce their contributions based on their fears of hypothetical future harm are independent decisions not fairly traceable to § 6033(b)(5). Just as in *Amnesty International*, "the costs that they have incurred . . . are simply the product of their fear of surveillance . . . such a fear is insufficient to create standing," *id.* at 417 (citation omitted). Buckeye's alleged harms are the result of its donors' alleged subjective fears, not the actual operation of the law, and such fears of hypothetical future harm are insufficient to create standing.

As the Sixth Circuit has held: "[T]o allege a sufficient injury under the First Amendment, a plaintiff must establish that he or she is regulated, constrained, or compelled directly by the government's actions, instead of by his or her own subjective chill." *ACLU v. Nat'l Sec. Agcy.*, 493 F.3d 644, 661 (6th Cir. 2007) (citations omitted). Here, the alleged harm results from the alleged subjective chill

of Buckeye's donors, not from any actual retaliation by the IRS or third parties.[6]
This is insufficient to support standing.  *See Buchholz v. Meyer Njus Tanick, PA*,
946 F.3d 855, 865-66 (6th Cir. 2020) ("Buchholz's allegation of anxiety falls short of
the injury-in-fact requirement because it amounts to an allegation of fear of
something that may or may not occur in the future.").  Because Buckeye has failed
to allege any direct harm arising from the statute, and because the indirect harm it
identifies is not fairly traceable to the statute at issue, Buckeye has failed to allege
an injury in fact, and therefore this case should be dismissed under Rule 12(b)(1).

## II.   Buckeye has failed to state a claim because the substantial-contributor reporting requirement is reasonably related to the offered tax benefit, and thus is a constitutional condition on the receipt of the tax benefit.

The substantial-contributor reporting requirement is constitutional because
it is a condition to receiving an optional tax benefit and because the condition is
rationally related to that benefit.  Buckeye's argument to the contrary rests on the
premise that the statute requires organizations to disclose their contributors.  But
as discussed below, the disclosure condition is not a mandatory requirement; rather,
it is a condition Congress placed on preferential tax status.  Congress had a rational
basis for requiring § 501(c)(3) organizations to disclose the identity of their
substantial contributors in exchange for providing a tax deduction for those
donations, and thus Buckeye has failed to state a claim.

---

[6] Indeed, the alleged injury is even more remote and speculative than in *ACLU,*
because here the alleged subjective chill is not to Plaintiff but to third-party donors.

### A.  Buckeye is not compelled to disclose its contributors.

#### 1.  Section 501(c)(3) status is opt-in; Buckeye chose to apply for § 501(c)(3) status on the terms on which Congress made it available.

Buckeye incorrectly asserts that it is compelled to disclose its contributors to the IRS (Compl. ¶¶ 5, 34, 38-41).  In fact, there is no compulsion.  Buckeye is required to report its substantial contributors only because Buckeye voluntarily elected § 501(c)(3) treatment.  Absent its decision to apply for § 501(c)(3) status, Buckeye would have been free to carry on its activities and to accept contributions from its supporters without having to disclose annually its substantial contributors' names and addresses.  Section 501(c)(3) status is opt-in; an organization must abide by the requirements and restrictions applicable to § 501(c)(3) organizations in exchange for certain tax benefits.  There is nothing compulsory about § 501(c)(3). *Cf. Ark. Writers' Project v. Ragland*, 481 U.S. 221, 237 (1987) (Scalia, J., dissenting) ("The reason that denial of participation in a tax exemption or other subsidy scheme does not necessarily 'infringe' a fundamental right is that – unlike direct restriction or prohibition – such a denial does not, as a general rule, have any significant coercive effect.").

Buckeye need not even give up its tax exemption to allow its donors to avoid the substantial-contributor reporting requirement.  It could retain its § 501(c)(3) status, establish a § 501(c)(4) affiliate, and direct donors concerned about the substantial-contributor reporting requirement to support the affiliate instead, albeit without a charitable contribution deduction under § 170.  *See Regan v. Taxation With Representation of Wash.*, 461 U.S. 540, 544 (1983) (discussing how the plaintiff

in that case could operate with a dual § 501(c)(3) and § 501(c)(4) structure).  The substantial-contributor reporting requirement applies only because Buckeye elected preferential tax treatment for itself and its donors.  This is not compulsion.

### 2. The availability of tax preferences does not constitute compulsion.

Nor does the fact that Buckeye can raise additional funds if it has § 501(c)(3) status mean that Buckeye is compelled to seek that status.  The Supreme Court has repeatedly held that Congress is not constitutionally obligated to provide tax benefits, subsidies, or any other allocation from the public fisc to assist taxpayers in the exercise of their First Amendment rights.  *See, e.g., Taxation With Representation*, 461 U.S. at 550 ("Although TWR does not have as much money as it wants, and thus cannot exercise its freedom of speech as much as it would like, the Constitution does not confer an entitlement to such funds as may be necessary to realize all the advantages of that freedom.") (internal quotation marks and citation omitted).  Buckeye may be able to accomplish its goals more effectively with a public subsidy, but that does not mean Buckeye is being compelled to accept that subsidy. *Cf. Christian Echoes Nat. Ministry v. United States*, 470 F.2d 849, 856 (10th Cir. 1972) (rejecting the proposition that "Congress is constitutionally restrained from withholding the privilege of tax exemption whenever it enacts legislation relating to a nonprofit religious organization.").

### B. Requiring disclosure of contributors as a condition of tax-exempt status and deductibility of contributions is not an unconstitutional condition.

Congress has placed certain conditions on organizations that seek to receive tax-deductible contributions, including that they must report the source of some of those contributions. This requirement is reasonably related to the government subsidies offered to § 501(c)(3) organizations. It is also content-neutral – the substantial-contributor reporting requirement applies regardless of the content of the organizations' speech. The § 501(c) regime, with its eligibility requirements and conditions, thus represents a valid exercise of Congress's taxing power and is consistent with the First Amendment.

### 1. The § 501(c) regime is a form of subsidy.

The Constitution authorizes a general income tax and does not mandate any specific deductions or exemptions. U.S. Const. art. XVI. Consistent with that authorization, Congress has imposed a tax on "all income from whatever source derived," 26 U.S.C. § 61(a). The tax applies to individuals and to corporations. *Id.* §§ 1, 11.

Congress has authorized a number of deductions and exemptions from the income tax. These are statutory, not constitutional. "Deductions are a matter of grace and Congress can, of course, disallow them as it chooses." *Commissioner v. Sullivan*, 356 U.S. 27, 28 (1958).

Because the income tax applies to all income absent a statutory exception, deductions and exemptions are in effect a subsidy. As the Supreme Court has observed: "Both tax exemptions and tax-deductibility are a form of subsidy that is

administered through the tax system.  A tax exemption has much the same effect as a cash grant to the organization of the amount of tax it would have to pay on its income.  Deductible contributions are similar to cash grants of the amount of a portion of the individual's contributions." *Taxation With Representation*, 461 U.S. at 544.

> ### 2. If an organization does not want to comply with the substantial-contributor reporting requirement, it should decline to seek the associated tax benefit.

If an organization does not want to comply with the substantial-contributor reporting requirement, its remedy is to decline to apply for tax-exempt status under § 501(c)(3).  "As a general matter, if a party objects to a condition on the receipt of federal funding, its recourse is to decline the funds.  This remains true when the objection is that a condition may affect the recipient's exercise of its First Amendment rights." *Agency for Int'l Dev. v. Alliance for Open Soc. Int'l*, 570 U.S. 205, 214 (2013) (citations omitted); *see Christian Echoes*, 470 F.2d at 857 ("In light of the fact that tax exemption is a privilege, a matter of grace rather than right, we hold that the limitations contained in Section 501(c)(3) . . . do not deprive Christian Echoes of its constitutionally guaranteed right of free speech.  The taxpayer may engage in all such activities without restraint, subject, however, to withholding of the exemption or, in the alternative, the taxpayer may refrain from such activities and obtain the privilege of exemption."); *United States v. Am. Library Ass'n*, 539 U.S. 194, 212 (2003) (plurality opinion) (upholding requirement that libraries install filtering software as a condition of federal funding:  "To the extent that libraries wish to offer unfiltered access, they are free to do so without federal assistance."); *cf.*

*Rust v. Sullivan*, 500 U.S. 173, 199 n.5 (1991) ("Title X subsidies are just that, subsidies. The recipient is in no way compelled to operate a Title X project; to avoid the force of the regulations, it can simply decline the subsidy.") (citation omitted).

As noted above, § 501(c)(3) status is a form of subsidy. Organizations such as Buckeye are not compelled to elect § 501(c)(3) status; to avoid the reporting requirement, they can simply choose not to apply for § 501(c)(3) status. Buckeye voluntarily elected to take advantage of the tax benefits available to § 501(c)(3) organizations. And even now, Buckeye could avoid the substantial-contributor reporting requirement by forming a § 501(c)(4) affiliate and directing concerned contributors to donate to the affiliate instead. (Of course, those donors would have to forgo a charitable contribution deduction.) If Buckeye or its donors are uncomfortable with the substantial-contributor reporting requirement, they need simply forgo the preferential tax treatment.

### 3. Requiring disclosure of the contributions' sources is rationally related to the tax-deductibility of those contributions, and so is not unconstitutional.

Requiring disclosure of substantial contributors is constitutional because it is rationally related to the provision of tax-exempt status and a tax deduction for charitable contributions and because it does not seek to regulate conduct unrelated to the tax benefits. "Within broad limits, 'when the Government appropriates public funds to establish a program it is entitled to define the limits of that program.'" *Am. Library Ass'n*, 539 U.S. at 211 (quoting *Rust*, 500 U.S. at 194). Congress has allowed tax-exempt status and a tax deduction for contributions to certain entities – a public subsidy – and its requirements, including the substantial-

contributor reporting requirement, are part of the definition and limits of the tax benefits. Those definitions and limits are rational and are squarely related to those benefits and are thus constitutional. *See N.E.A. v. Finley*, 524 U.S. 569, 588 (1998) ("So long as legislation does not infringe on other constitutionally protected rights, Congress has wide latitude to set spending priorities.") (citation omitted).

### a. The relevant question is whether the condition is directly related to the benefit provided.

When a condition restrains a constitutionally protected activity, the condition is valid if it is part of the defined subsidy program, but it may be invalid if it seeks to use the subsidy program to regulate protected activity outside the program. As the Supreme Court explained: "[T]he relevant distinction that has emerged from our cases is between conditions that define the limits of the government spending program – those that specify the activities Congress wants to subsidize – and conditions that seek to leverage funding to regulate speech outside the contours of the program itself." *Agy. for Int'l Dev.*, 570 U.S. at 214-15. Thus, "'unconstitutional conditions' cases involve situations in which the Government has placed a condition on the *recipient* of the subsidy rather than on a particular program or service, thus effectively prohibiting the recipient from engaging in the protected conduct outside the scope of the federally funded program." *Rust*, 500 U.S. at 197 (emphasis in original). The Sixth Circuit has phrased the question as "whether the condition directly relates to the benefit offered or instead 'reaches beyond' that benefit to regulate unrelated constitutional rights." *Ostergren v. Frick*, 856 F. App'x 562, 571 (6th Cir. 2021).

### b. The substantial-contributor reporting requirement is constitutional because it directly relates to the tax benefit.

The challenged statute is constitutional because it does not reach beyond the tax benefits to regulate unrelated constitutional rights – instead, it directly relates to the specific tax benefits that Congress allowed.  Section 501(c)(3) organizations are exempt from tax, and they are eligible to receive tax-deductible charitable contributions, but they must disclose the identities of their substantial contributors, among other conditions.  Congress determined that more oversight of tax-deductible contributions was necessary and required that reporting for § 501(c)(3) organizations.  Disclosure of the names and addresses of substantial contributors provides the IRS with additional information that is relevant to determining whether § 501(c)(3) organizations are acting for the improper benefit of individuals with influence over the organization, as well as to the propriety of tax deductions claimed by donors.  The benefits at issue are § 501(c)(3) tax-exempt status and tax deductions for charitable contributions, and one of the conditions on those benefits is reporting to the IRS the identities of those able to exert the largest influence over the organization and eligible to claim the largest tax deductions.  There is thus a rational relationship between the condition and the benefits.

The requirement that § 501(c)(3) organizations disclose their substantial contributors to the IRS directly relates to the benefits offered – an exemption from the income tax and tax deductions for contributions.  The requirement is therefore constitutional.  In *Ostergren v. Frick*, the Sixth Circuit considered a program that required participants to agree not to share course materials as a condition of

participation in the program. Ordinarily, such sharing could be protected by the First Amendment. But the Sixth Circuit held that this condition related to the benefit being offered, and so was not an attempt to leverage the benefit to influence unrelated conduct; therefore, the condition was constitutional. *See Ostergren*, 856 F. App'x at 572 ("The restriction on publishing course materials operates within the scope of the [MCAO] program and in no way regulates speech outside the contours of that program.") (internal quotation marks and citation omitted).[7] Similarly, the substantial-contributor reporting requirement is not an attempt to regulate speech outside the contours of the tax system – it reflects Congress's decision as to the information that must be reported to the IRS to facilitate tax administration in connection with tax-exempt organizations eligible to receive tax-deductible contributions.[8]

---

[7] The result could be different if the condition were based on the content of the organization's speech, but the reporting requirement at issue applies regardless of the ideas or viewpoints the organization espouses.

[8] The substantial-contributor reporting requirement further discourages improper transactions simply by its nature as a disclosure provision. It is widely understood as a matter of tax policy that disclosure to the IRS promotes lawful behavior. *See* Leandra Lederman, *Reducing Information Gaps To Reduce the Tax Gap: When Is Information Reporting Warranted?*, 78 Fordham L. Rev. 1733, 1735 (2010); *see also* Jay A. Soled, *Homage to Information Returns*, 27 Va. Tax. Rev. 371, 371-73 (2007) ("Most studies indicate that [information] returns are pivotal in causing taxpayers to be forthright in their reporting practices. These same studies indicate that in the absence of such returns, taxpayer compliance plummets.") (citations omitted); Henrik J. Kleven *et al.*, *Why Can Modern Governments Tax So Much? An Agency Model of Firms as Fiscal Intermediaries*, 83 Economica 219 (2016) ("It is widely known in the tax law literature as well as among tax practitioners that tax enforcement is excellent whenever such third-party reporting is in place, and that enforcement is weak – even in the most advanced economies – when such third-party reporting is not in place, as in the case of small family businesses.") (internal citations omitted).

    **4. Longstanding precedent demonstrates that disclosure and conduct restrictions as a requirement for preferential tax treatment are constitutional.**

        **a. Numerous Supreme Court cases affirm that Congress can properly limit tax benefits based on disclosure and conduct.**

The Supreme Court and other courts have considered and rejected challenges to tax benefits that are conditioned on disclosure and conduct requirements, even where those requirements could be unconstitutional if they were mandatory rather than opt-in. The most significant case, *Regan v. Taxation With Representation of Washington*, 461 U.S. 540 (1983), involved an organization, TWR, whose § 501(c)(3) application was denied because the IRS determined that a substantial portion of its activities would consist of attempting to influence legislation (making it statutorily ineligible for § 501(c)(3) status). *Id.* at 542. The organization claimed the prohibition against lobbying violated the First Amendment.

The Supreme Court held that the statute was constitutional because it did not prevent TWR from lobbying – it simply conditioned TWR's tax exemption on its compliance with certain requirements, including limitations on its right to lobby. The Court likened the exemption to a subsidy: "Congress has not infringed any First Amendment rights or regulated any First Amendment activity. Congress has simply chosen not to pay for TWR's lobbying." *Id.* at 546. Because Congress's decision not to award a tax exemption for lobbying "is not irrational," the Supreme

Court concluded that "[w]e have no doubt but that this statute is within Congress' broad power in this area." *Id.* at 550.[9]

*TWR* demonstrates that Congress does not violate the Constitution where it requires an organization to forgo a constitutional right as a condition of receiving a related tax benefit. The right to lobby the government is protected by the First Amendment, but Congress is not required to support that right with tax benefits, and it comports with the First Amendment for Congress to provide tax benefits to organizations that do not lobby the government while denying those benefits to organizations that do. As the Court summarized: "The issue in this case is not whether TWR must be permitted to lobby, but whether Congress is required to provide it with public money with which to lobby." *Id.* at 551.

Similarly, the Supreme Court held in *Grove City College v. Bell,* 465 U.S. 555 (1984), *superseded by statute on other grounds*, that Congress did not offend the First Amendment by conditioning receipt of federal educational assistance on rules prohibiting gender discrimination. *Id.* at 575. The Court noted that "Congress is free to attach reasonable and unambiguous conditions to federal financial assistance that educational institutions are not obligated to accept." *Id.* (citation omitted). Grove City could avoid complying with the non-discrimination rules by

---

[9] The Court observed that TWR could operate in a dual-entity structure, with a § 501(c)(4) entity, which could not receive tax-deductible contributions but which could lobby, and a § 501(c)(3) entity, which could receive tax-deductible contributions but which could not lobby. *Id.* at 544. Buckeye is in a similar position here; it could establish for its donors who desire confidentiality a § 501(c)(4) affiliate to which they could contribute.

declining to accept federal funding, and so the First Amendment was not implicated. *Id.* at 575-76.

Under the above Supreme Court precedent, it does not offend the First Amendment for Congress to place restrictions on tax benefits even if those restrictions involve limitations on speech or conduct that are protected by the First Amendment, so long as the restriction is rationally related to the tax benefit. Congress has broad discretion to allocate benefits at the public expense, and requiring recipients of those benefits to agree to reasonable conditions to receive those benefits is well within its power. Indeed, this principle is more than a century old. In 1913, the Supreme Court upheld a rule requiring newspapers that sought preferential U.S. mail rates to publish a statement of their editors and owners on the ground that the rule was part of the overall statutory system: "[T]he right on behalf of the publishers to continue to enjoy great privileges and advantages at the public expense [is] a right given to them by Congress upon condition of compliance with regulations deemed by that body incidental and necessary to the complete fruition of the public policy lying at the foundation of the privileges accorded." *Lewis Pub. Co. v. Morgan*, 229 U.S. 288, 316 (1913).

In the same way, the issue in this case is not whether Buckeye can receive contributions without disclosing their source, but whether Congress is required to provide Buckeye with tax benefits given Buckeye's desire not to disclose its contributors. And just as in those cases, Congress is not required to provide that subsidy. *Cf. Cammarano v. United States*, 358 U.S. 498, 513 (1959) (affirming

constitutionality of provision that denies tax deductions for expenses to promote or defeat legislation: "Petitioners are not being denied a tax deduction because they engage in constitutionally protected activities, but are simply being required to pay for those activities entirely out of their own pockets . . . .").

Congress has not imposed a mandate that all organizations disclose their substantial contributors to the IRS. Organizations exempt from taxation under § 501(c)(4) do not have a Congressionally mandated annual substantial-contributor reporting requirement. But Congress has determined that if these organizations want their donors to receive tax deductions for their contributions, then they must disclose the identities of their substantial contributors to the IRS. There is no valid ground for overruling Congress's judgment in this regard.

### b. The Eleventh Circuit rejected a nearly identical claim in *Mobile Republican Assembly*.

The Eleventh Circuit rejected a claim very similar to Buckeye's in *Mobile Republican Assembly v. United States*, 353 F.3d 1357 (11th Cir. 2003). That case involved a similar preferential tax regime – § 527 of the Internal Revenue Code, which allows political organizations to receive contributions tax-free. 26 U.S.C. § 527. To obtain this preferential tax treatment, the organization must register with the IRS and must file reports disclosing its expenditures and contributions. *Id.* § 527(i), (j). The plaintiffs argued that this reporting requirement was unconstitutional. The Eleventh Circuit held that the case was controlled by *TWR*: "Congress has enacted no barrier to the exercise of the appellees' constitutional rights. Rather, Congress has established certain requirements that must be

followed in order to claim the benefit of a public tax subsidy." *Mobile Repub.*

*Assembly*, 353 F.3d at 1361.  Thus, there was no constitutional violation.

*Mobile Republican Assembly* is indistinguishable from this case.  Congress

has enacted no barrier to the freedom of association of these organizations.  So long

as they are not seeking preferential tax treatment, they are not subject to the

substantial-contributor reporting requirement (or any of the other conditions in

§ 501(c)(3)).  But if they choose to seek a public tax subsidy, then they must comply

with the requirements that Congress has established to claim that subsidy.  As the

Eleventh Circuit observed:  "Any political organization uncomfortable with the

disclosure of expenditures or contributions may simply decline to register under

Section 527(i) and avoid these requirements altogether." *Id*.  Any organization

uncomfortable with the disclosure of the identity of its substantial contributors may

simply decline to apply under § 501(c)(3) and avoid these requirements altogether.

### C. *Americans for Prosperity* does not apply here because that case involves compelled disclosure, not a condition to a tax benefit.

A recent Supreme Court case barring California from requiring charitable

organizations to disclose their donors to California, *Americans for Prosperity*

*Foundation v. Bonta*, 141 S. Ct. 2373 (2021), is irrelevant here because that case

involves mandatory disclosure, while this case involves disclosure as a condition for

an opt-in tax benefit.  The analysis for compelled disclosure is fundamentally

distinct from the unconstitutional-conditions doctrine discussed above.

Organizations such as Buckeye are free to engage in any activity they choose

without becoming subject to the substantial-contributor reporting requirement, so long as they do not seek preferential tax treatment under § 501(c)(3).

The California law at issue in *Americans for Prosperity* required all charitable entities that sought to operate in California to register and disclose their contributors. *See id.* at 2379-80 ("In order to operate and raise funds in California, charities generally must register with the Attorney General and renew their registrations annually.") (citing Cal. Gov't Code §§ 12585(a), 12586(a)). Crucially, the registration requirement applied whether or not the organization sought tax benefits. *See* 11 Cal. Code of Reg. § 301 (2019) (requiring both tax-exempt and non-tax-exempt charities to file with the California Attorney General). Thus, an organization that wanted to solicit contributions in California for charitable purposes was required to disclose its contributors regardless of whether it sought preferential tax treatment. This was a mandatory regime, not an opt-in subsidy. Indeed, the decision acknowledges the distinction between California's mandatory regime and the § 6033(b)(5) reporting requirement: "revenue collection efforts and conferral of tax-exempt status may raise issues not presented by California's disclosure requirement, which can prevent charities from operating in the State altogether." *Americans for Prosperity*, 141 S. Ct. at 2389 (citations omitted).

Because the law in California mandated disclosure as a condition of operating in the state, the Supreme Court analyzed the law under the standard that applies to compulsory disclosure – exacting scrutiny. As the Court explained: "*NAACP v. Alabama* [357 U.S. 449 (1958)] did not phrase in precise terms the standard of

review that applies to First Amendment challenges to **compelled disclosure**. We have since settled on a standard referred to as 'exacting scrutiny.'" *Id.* at 2382-83 (citing *Buckley v. Valeo*, 424 U.S. 1, 64 (1976) (*per curiam*)) (emphasis added). After rejecting an argument that the standard should instead be strict scrutiny, the Court concluded: "Regardless of the type of association, compelled disclosure requirements are reviewed under exacting scrutiny." *Id.* at 2383.

In this case, Buckeye is challenging a condition of receiving preferential tax treatment, not a rule compelling disclosure. The relevant analysis is the unconstitutional conditions doctrine discussed above, not the exacting scrutiny applied to compelled disclosures. *American Prosperity Foundation* is thus inapposite.[10]

## **CONCLUSION**

Buckeye lacks standing to challenge the substantial-contributor reporting requirement because it fails to allege that it has suffered any direct harm or any actual or certainly impending indirect harm. The harms it describes are the result of an alleged chilling effect of government information gathering on third-party donors, which does not constitute a cognizable harm sufficient to support standing. This case should therefore be dismissed under Rule 12(b)(1).

Regardless, Buckeye has not stated a claim because there is no constitutional basis for Buckeye to demand tax-exempt status and a tax deduction for its

---

[10] Also irrelevant is the compelled speech doctrine, which addresses circumstances where there is a legal command to support or endorse certain speech. *See Wooley v. Maynard*, 430 U.S. 705, 714 (1977). Buckeye has not alleged that it objects to the disclosure as compelled speech, nor could such a complaint succeed.

contributors under § 501(c)(3) while refusing to comply with one of the requirements Congress placed on those subsidies. Congress has provided tax subsidies for organizations that comply with certain requirements, including restricting their activities to charitable purposes, accepting limits on their right to lobby the government and advocate for legislation, and disclosing certain details about their operations and finances, including the identities of their substantial contributors. The § 501(c)(3) tax benefits are not compulsory; organizations such as Buckeye are free to decline Congress's offer and engage in whatever activities they choose, including lobbying and advocating for legislation, without annually disclosing the identities of their contributors to the IRS. But if they choose to accept a subsidy in the form of tax benefits to support their activities, they must comply with the reasonable conditions that Congress has determined are appropriate, including the requirement to disclose their substantial contributors. Congress's broad power to allocate public benefits, and its strong interest in ensuring that the IRS has the information it needs to ensure that those benefits are well-spent, demonstrate a rational relationship between the preferential tax treatment and the disclosure requirement. The condition on the federal subsidy is thus consistent with the First Amendment.

In structuring the reporting regime, Congress had to strike a balance among many competing interests, including the need to provide the IRS with the information it needs to enforce the federal tax laws and the need to avoid overburdening taxpayers and other entities with reporting obligations. Congress

has determined how the balance should be struck, and it has prescribed annual reporting of substantial contributors for § 501(c)(3) entities. There is no constitutional basis for the courts to overrule Congress's judgment about the proper balance among these considerations. Any reconsideration of the appropriate balance must come from Congress, not the court system. Buckeye thus failed to state a claim, and so this case should be dismissed.

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General

*/s/ Arie M. Rubenstein*
ARIE M. RUBENSTEIN
SAMUEL P. JONES
Trial Attorneys, Tax Division

JOSEPH A. SERGI
Senior Litigation Counsel, Tax Division

U.S. Department of Justice
P.O. Box 55
Washington, D.C. 20044
202-307-6588 (v)
202-514-5238 (f)
arie.m.rubenstein@usdoj.gov