# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

The Buckeye Institute,

    Plaintiff,

v.

Internal Revenue Service, *et al.*,

    Defendants.

Case No. 2:22-cv-4297

Judge Michael H. Watson

Magistrate Judge Deavers

## OPINION AND ORDER

The Internal Revenue Service ("IRS"), Douglas O'Donnell, United States Department of Treasury, and Janet Yellen (collectively, "Defendants") move to dismiss The Buckeye Institute's ("Plaintiff") Complaint. ECF No. 21. Plaintiff and Defendants also move for summary judgment on Plaintiff's claim.[1] ECF Nos. 36 & 43. For the following reasons, Plaintiff's motion for summary judgment and Defendants' motion for summary judgment are **DENIED**.

## I. FACTS

Plaintiff is a nonprofit corporation that enjoys tax-exempt status under 26 U.S.C. § 501(c)(3) ("501(c)(3)"). Alt Decl., ¶¶ 2–3, ECF No. 36-1. In Plaintiff's words, Plaintiff often serves "as a government watchdog" and litigates "against federal, state, and local authorities to defend rights under the Ohio and United

---

[1] In Defendants' motion for summary judgment, Defendants make (or incorporate by reference) the same arguments they made in the motion to dismiss. Because the Court will address all of Defendants' arguments through the lens of summary judgment, the motion to dismiss, ECF No. 21, is **TERMINATED AS MOOT**.

States Constitutions." *Id.* ¶ 3. Plaintiff relies on financial support from donors. *Id.* ¶ 5.

Like other 501(c)(3) organizations, Plaintiff is subject to certain reporting requirements. Under 26 U.S.C. § 6033(b)(5), many 501(c)(3) organizations must annually disclose to the Secretary of the Treasury "the total of the contributions and gifts received by it during the year, and the names and addresses of all substantial contributors" (the "Disclosure Requirement").[2] A "substantial contributor" is a donor who contributes an aggregate total of $5,000 per tax year, if the contributed amount is more than two percent of the total contributions the organization receives in a tax year. 26 U.S.C. § 507(d)(2)(A). 501(c)(3) organizations comply with the Disclosure Requirement by properly completing and filing Schedule B to Form 990 ("Schedule B"). *See* Schedule B (Form 990), *available at* https://www.irs.gov/pub/irs-pdf/f990ezb.pdf. Although Schedule Bs must "be made available to the public at such times and in such places as the Secretary may prescribe," the Secretary may not "disclose the name or address of any contributor to any organization" (in other words, the Secretary must make redacted Schedule Bs available to the public). 26 U.S.C. § 6104(b).

However, the IRS has a less-than-perfect record for keeping Schedule Bs and Form 990s confidential: the IRS acknowledges at least fourteen

---

[2] As Defendants point out, not all 501(c)(3) organizations are subject to the Disclosure Requirements. For example, "religious activities of any religious order" are exempted from the Disclosure Requirement. *See* 26 U.S.C. § 6033(a)(3)(A).

Case No. 2:22-cv-4297 Page 2 of 13

unauthorized disclosures of Form 990 information since 2010. *See* IRS Talking Points, ECF No. 36-9.

Plaintiff argues the Disclosure Requirement infringes on Plaintiff's First Amendment rights to freedom of association and assembly. *E.g.*, Mot., ECF No. 36. According to Plaintiff, Plaintiff's (and Plaintiff's donors') "exercise of these rights to associate with each other in pursuing their mutual social, political, and ideological goals is significantly curtailed because they reasonably fear that they cannot associate privately." *Id.* at 8. Plaintiff's donors have "made clear" that they are afraid of "retribution" from Plaintiff's opponents if their Schedule B information becomes public. Alt Decl. ¶¶ 8, ECF No. 36-1. Some of Plaintiff's donors have reduced their contributions to avoid being listed on Plaintiff's Schedule B. *Id.* ¶ 11–15.

Plaintiff sues Defendants, contending that the Disclosure Requirement is unconstitutional under the First Amendment, both facially and as applied to Plaintiff. Compl. ¶¶ 36–42, ECF No. 1.

## II. STANDARD OF REVIEW

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a): "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The Court must grant summary judgment if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case" and "on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing there is a genuine dispute of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 255 (1986). The Court disregards "all evidence favorable to the moving party that the jury would not be required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (citation omitted). Summary judgment will "not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248 (internal citations and quotation marks omitted).

The Court is not "obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). The Court may rely on the parties to call attention to the specific portions of the record that

demonstrate a genuine issue of material fact. *Wells Fargo Bank, N.A. v. LaSalle Bank N.A.*, 643 F. Supp. 2d 1014, 1022 (S.D. Ohio 2009).

### III. ANALYSIS

Both sides move for summary judgment on Plaintiff's claim. ECF Nos. 36 & 43. Before addressing the merits of Plaintiff's claim, the Court will consider whether Plaintiff has standing.

**A. Standing**

Pursuant to Article III of the United States Constitution, federal jurisdiction is limited to "cases" and "controversies," and standing is "an essential and unchanging part of" this requirement. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). If a plaintiff lacks standing, then the federal court lacks jurisdiction. *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019). Thus, standing is a "threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

Article III standing has three elements. "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted). Second, the injury must be "fairly traceable to the challenged action of the defendant." *Id.* (internal alterations omitted). Third, it must be likely that the injury will be "redressed by a favorable decision." *Id.* at 561.

Defendants argue that Plaintiff lacks standing because Plaintiff's asserted injury has an overly attenuated connection to the Disclosure Requirement. Resp. 2–3, ECF No. 44. The Court disagrees.

First, Plaintiff has (at least one) injury-in-fact: it has received fewer donations. Thus, Plaintiff has alleged a monetary harm. When a plaintiff suffers a monetary harm, it "has suffered a concrete injury in fact under Article III." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021).

Next, consider causation. For standing purposes, "causation" means a "causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant[.]" *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted). Defendants argue that Plaintiff cannot satisfy causation because it is the actions of third parties (that is, the donors' decision to donate less or not at all) that cause Plaintiff's injury, not any action by Defendants. Mot. 6–12, ECF No. 21.

The Supreme Court of the United States' decision in *Department of Commerce v. New York*, 139 S. Ct. 2551 (2019) forecloses Defendants' argument. In *Department of Commerce*, a group of states (the "States") challenged a Census rule that required respondents to mark if they were a citizen or non-citizen. *Id.* at 2563–65. The States argued that many non-citizens would choose to not complete the Census rather than check the "non-citizen" box because of fears of legal consequences. *Id.* at 2565–66. Because the States

received federal funding based on population, this non-response caused the States a financial harm (among other harms). *Id.*

The Federal Government (the "Government") argued that the harm was not "fairly traceable" to the Census rule because the harm depended "on the independent action of third parties choosing to violate their legal duty to respond to the census." *Id.* The Supreme Court rejected this argument as follows:

> [W]e are satisfied that, in these circumstances, respondents have met their burden of showing that third parties will likely react in predictable ways to the citizenship question, even if they do so unlawfully and despite the requirement that the Government keep individual answers confidential. The evidence at trial established that noncitizen households have historically responded to the census at lower rates than other groups, and the District Court did not clearly err in crediting the Census Bureau's theory that the discrepancy is likely attributable at least in part to noncitizens' reluctance to answer a citizenship question. Respondents' theory of standing thus does not rest on mere speculation about the decisions of third parties; it relies instead on the predictable effect of Government action on the decisions of third parties . . . Because Article III requires no more than de facto causality[] . . . traceability is satisfied here.

*Id.* at 2566 (internal quotation marks and citations omitted).

The same reasoning applies here with equal weight. Plaintiff points to evidence that donors will "likely react in predictable ways" to the disclosure requirement: the donors reduce their donations to avoid being part of the disclosure. Alt Decl. ¶¶ 11–15, ECF No. 36-1.³ Indeed, not only has Plaintiff

---

³ Defendants argue that the Court should not consider Alt's statements about why donors have reduced contributions because, according to Defendants, those statements are hearsay. However, because those statements *could* be presented in an admissible form at trial (*e.g.*, by calling the donors to testify), the Court may consider them on summary judgment. *See Bard v. Brown Cnty., Ohio*, 970 F.3d 738, 758, n.12 (6th Cir.

Case No. 2:22-cv-4297   Page 7 of 13

shown that donors are "likely" to react this way, Plaintiff has shown that donors *already have* reacted this way. In sum, Plaintiff's "theory of standing thus does not rest on mere speculation about the decisions of third parties; it relies instead on the predictable effect of Government action on the decisions of third parties." *Dep't of Com.*, 139 S. Ct. at 2566 (citations omitted). As a result, causation is satisfied.

Finally, Plaintiff satisfies redressability because the Court could redress Plaintiff's injury by enjoining enforcement of the Disclosure Requirement.

Accordingly, Plaintiff has standing to pursue its claims.[4]

## B. Merits

Turning to the merits, the first issue is what standard of review applies to Plaintiff's First Amendment claim. A recent Supreme Court case, *Americans for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373 (2021) ("*AFPF*"), is instructive.

In *AFPF*, certain charitable organizations challenged a California state regulation (the "California Regulation") that required charitable organizations to file a Schedule B with the State of California. 141 S. Ct. at 2379. "Out of concern for their donors' anonymity," the two plaintiff organizations did not

---

2020) (instructing that although certain "out-of-court statements may constitute inadmissible hearsay," "it is well-established that the party opposing summary judgment need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment" (quotation marks and citation omitted)).

[4] In arguing against standing, Defendants make many of the same arguments as the dissent in *Americans for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373, 2392–2405 (2021) (Sotomayor, J., dissenting). *See* Mot. 6–12, ECF No. 21. Unfortunately for Defendants, those arguments did not carry the day and are thus unpersuasive here.

provide those disclosures (or provided redacted versions). *Id.* at 2380. The plaintiffs "alleged that disclosure of their Schedule Bs would make their donors less likely to contribute and would subject them to the risk of reprisals." *Id.* The plaintiffs argued that the California Regulation violated the First Amendment. *Id.*

The Supreme Court began by observing that "it is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as [other] forms of governmental action." *Id.* at 2382 (cleaned up). A three-justice plurality of the Court concluded that "exacting scrutiny" was the appropriate level of scrutiny for compelled disclosure cases.[5] *Id.* at 2382–83.

Under the exacting scrutiny standard, "there must be a substantial relation between the disclosure requirement and a sufficiently important governmental interest." *Id.* at 2383 (quotation marks and citations omitted). To pass exacting scrutiny, the "strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights." *Id.* (cleaned up). In addition, although a compelled disclosure requirement need not be "the least restrictive means of achieving [the government's] ends," the requirement must be "narrowly tailored to the government's asserted interest." *Id.*

---

[5] One justice concurred in the result but would have analyzed the claim under strict scrutiny. *Id.* at 2389–91. Two other justices concurred in the result but would not have decided which level of scrutiny to apply because, in their view, the California Regulation failed under either standard. *Id.* at 2391–92.

Applying *AFPF*, exacting scrutiny is the correct standard for this case. As in *AFPF*, the Disclosure Requirement here requires (or "compels") 501(c)(3) organizations, including Plaintiff, to disclosure their contributors to the federal government. Thus, as in *AFPF*, the Disclosure Requirement is a compelled disclosure and will be reviewed under exacting scrutiny. *AFPF*, 141 S. Ct. at 2383 ("Regardless of the type of association, compelled disclosure requirements are reviewed under exacting scrutiny.").

Defendants disagree. Defendants argue that *AFPF's* exacting scrutiny framework is inapplicable here because Plaintiff voluntarily chose to take advantage of the 501(c)(3) tax benefit. *E.g.*, Mot. 2–3, ECF No. 43. In support of this argument, Defendants cite *Regan v. Taxation with Representation of Washington*, 461 U.S. 540 (1983). *Id.* Relevant here, *Regan* explains two rules: (1) both "tax exemptions and tax-deductibility are a form of subsidy"; and (2) although "the government may not deny a benefit to a person because he exercises a constitutional right," Congress may choose to not fund certain activities without offending the First Amendment. 461 U.S. at 544–46.

The cases since *Regan* (including *AFPF*) developed on these rules. From those cases, the Court synthesizes the following rule: Congress may, without offending the First Amendment, condition benefits for *programs* or *activities* on compliance with restrictions on First Amendment activities, but if Congress denies a benefit because an *organization* will not comply with a restriction on

First Amendment activities, that denial may be unconstitutional. *See, e.g., Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 218, (2013) (striking down a law that required organizations that received certain federal funding to "adopt—as their own—the Government's view on an issue of public concern"); *Rust v. Sullivan*, 500 U.S. 173, 195–200 (1991) (holding that Congress could prohibit recipients of federal funds for a "family planning" public health project from using those funds for anything related to abortion).

Applied here, the Disclosure Requirement requires any 501(c)(3) to disclose their substantial donors in order to operate as a 501(c)(3). That is, if a charitable organization does not disclose their substantial donors, they may not receive the benefit of 501(c)(3) status. Thus, this is not an example of the Government "simply insisting that public funds be spent for the purposes for which they were authorized." *Rust*, 500 U.S. at 196. Instead, the Government denies its 501(c)(3) tax benefits entirely to organizations that resist the disclosure requirement. Thus, if the Disclosure Requirement is unconstitutional, it would be an unconstitutional condition on receipt of the tax benefits. *See id.* at 196–97 (explaining that the "'unconstitutional conditions' cases involve situations in which the Government has placed a condition on the *recipient* of the subsidy rather

than on a particular [federally-funded] program or service[.]" (emphasis in original)).[6]

In sum, the remaining question is whether the Disclosure Requirement is unconstitutional, and the Court will review the constitutionality of the Disclosure Requirement under exacting scrutiny. The parties' briefing under the exacting scrutiny raises a genuine issue of material fact. For example, Defendants argue and point to some evidence that the Disclosure Requirement is an important part of the IRS's enforcement and compliance procedures. Mot. 8–11, ECF No. 43. On the other hand, Plaintiff raises several issues that undercut Defendants' arguments. Resp. 5–13, ECF No. 49. Determining which side is ultimately more persuasive will turn, at least in part, on witness credibility, which is an inappropriate consideration at summary judgment. *Anderson*, 477 U.S. at 255. Accordingly, both motions for summary judgment are **DENIED**.

---

[6] That Plaintiff could re-organize as a different type of 501(c) organization does not change this conclusion. As the Supreme Court has explained, both tax exempt status and tax deduction status (that is, the status that allows an organization to receive tax-deductible donations) are subsidies. *Regan*, 461 U.S. 544. If Plaintiff reorganizes as a different type of 501(c) organization, it would lose tax deduction status. Thus, the allegedly unconstitutional condition (the disclosure requirement) is on the tax deduction status.

## IV. CONCLUSION

For the following reasons, Plaintiff's motion for summary judgment and Defendants' motion for summary judgment are **DENIED**. The motion to dismiss is **TERMINATED AS MOOT**. The parties are **ORDERED** to file a joint notice **WITHIN FOURTEEN DAYS** identifying the anticipated length of trial, number of witnesses, and mutually available trial dates in the next several months.

The Clerk shall terminate ECF Nos. 21, 36, and 43.

**IT IS SO ORDERED.**

_____
MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT