UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
COLUMBUS DIVISION

| | |
|---|---|
| THE BUCKEYE INSTITUTE,<br>    *Plaintiff,*<br>    v.<br>INTERNAL REVENUE SERVICE;<br>DANIEL WERFEL, in his official<br>capacity as Commissioner of Internal<br>Revenue; UNITED STATES<br>DEPARTMENT OF THE TREASURY;<br>and JANET YELLEN, in her official<br>capacity as Secretary of the Treasury,<br>    *Defendants.* | No. 2:22-cv-4297-MHW-EPD<br><br>The Hon. Michael H. Watson,<br>U.S.D.J.<br><br>The Hon. Elizabeth P. Deavers,<br>U.S.M.J. |

## ANSWER TO FIRST AMENDED COMPLAINT

The United States on behalf of all Defendants responds to Plaintiff's First Amended Complaint as follows:

### FIRST DEFENSE

Plaintiff lacks standing, and therefore the Court lacks jurisdiction over this matter.

### SECOND DEFENSE

26 U.S.C. § 6033(b)(5) should be subject to rational basis scrutiny, and Plaintiff fails to state a claim that § 6033(b)(5) is unconstitutional under rational basis scrutiny, either facially or as applied.

### THIRD DEFENSE

For its third defense, the United States responds as follows in response to the specific numbered paragraphs contained in the Complaint. The United States denies each and every allegation contained in the complaint that is not expressly

admitted below. Any allegations not specifically admitted, denied, or otherwise responded to below are hereby denied. To the extent the Amended Complaint refers to or quotes from external documents, statutes, or other sources, Defendants may refer to such materials for their complete and accurate contents, but such references are not intended to be, and should not be construed as, an admission that the cited materials are (a) correctly cited or quoted by Plaintiff, (b) relevant to this, or any other, action, or (c) admissible in this, or any other, action. For ease of reference, this Answer replicates the headings contained in the Amended Complaint. Although Defendants believe such headings require no response, to the extent a response is deemed required and those headings and titles could be construed to contain factual allegations, those allegations are denied. Defendant admits, denies, or otherwise avers as follows regarding the First Amended Complaint as follows: The United States' responses are in bold type.

> 1. The First Amendment requires the government to strike a balance between its purported need for people's sensitive information and the risk to those people's associational privacy interests should their information, once harvested, be misused by the government or fall into the wrong hands. The government may not demand sensitive private information for which it has no real need—and which has a habit of being pilfered.

**Response: The allegations in this paragraph constitute legal argument to which no response is necessary.**

> 2. Unfortunately, the IRS has proven unable to secure its filers' secrets. Tax returns whose privacy is nominally protected by federal law are now fodder for political websites. And the IRS has a history of politicized enforcement. Donors to political advocacy groups have taken notice. Fearing retribution for their political activity, people have become more reluctant to donate to organizations that are required to divulge their associations to the IRS—and, by extension, to their

political enemies who can access IRS data. This dynamic impacts Plaintiff The Buckeye Institute, which is in the business of advocating on a variety of controversial political and social issues, and whose donors have been more reticent to support Buckeye for fear of retaliation by the IRS or by those who can access its records.

**Response: Denies the allegations of the first three sentences of this paragraph. Lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.**

3. The Supreme Court understands the problem. Two years ago, it barred California from collecting unredacted copies of IRS's Schedule B, the forms on which nonprofits divulge their top contributors, given that state's limited need for that information and its poor data privacy record. Americans for Prosperity Found. v. Bonta, 141 S. Ct. 2373 (2021).

**Response: The allegations in this paragraph constitute legal argument to which no response is necessary.**

4. The IRS, too, understands the problem. In 2020, it eliminated the Schedule B requirement for some tax-exempt organizations which it had previously imposed by regulation, stating that the risk of inadvertent disclosure of confidential taxpayer information and its ability to obtain the information as needed through other means rendered the regulation unnecessary. Guidance Under Section 6033 Regarding the Reporting Requirements of Exempt Organizations, 85 Fed. Reg. 103,31959 (May 18, 2020) (codified at 26 C.F.R. 1).

**Response: Admits that the IRS eliminated the use of schedule B for organizations that are tax-exempt under 26 U.S.C. § 501(c)(4) in 2020 but denies the remaining allegations in this paragraph. Avers that 85 Fed. Reg. 103,31959 should be referred to for a full expression of its terms.**

5. But the Schedule B requirement persists as a statutory matter for organizations such as Buckeye, which are exempt from taxation under 26 U.S.C. § 501(c)(3). See 26 U.S.C. § 6033(b)(5). This compelled disclosure regime, disconnected from any identifiable need for the information it gathers and then leaves at risk of public disclosure,

violates the First Amendment rights of association and assembly of Buckeye and its supporters, both on its face and as applied. This Court should follow the Supreme Court's lead, and that of the IRS itself, in ending the Schedule B requirement for Section 501(c)(3) organizations.

**Response: The allegations in this paragraph constitute legal argument to which no response is necessary.**

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case presents questions of federal law.

**Response: Denies.**

7. This Court is the proper venue pursuant to 28 U.S.C. §§ 1391(b)(2) and (e) because a substantial part of the events or omissions giving rise to the claims occurred and are occurring in this District, Buckeye resides in this District, and no real property is involved in this action.

**Response: Admits.**

## THE PARTIES

8. Buckeye is a nonpartisan, nonprofit, tax-exempt organization, organized under Ohio law, maintaining its headquarters in Columbus, Ohio. Buckeye seeks to promote limited and effective government and individual freedom through policy research and advocacy, often serving as a government watchdog and litigating to defend constitutional rights.

**Response: Admits that Buckeye holds itself out as a "nonpartisan, nonprofit, tax-exempt organization, organized under Ohio law" and has a headquarters in Columbus, Ohio. Lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations.**

9. The IRS is the chief tax collection agency of the United States and is a division of the United States Department of the Treasury.

Page 4 of 16

**Response: Admits that the Internal Revenue Service is a bureau of the Department of the Treasury responsible for collecting U.S. federal taxes and administering the Internal Revenue Code, the main body of the federal statutory tax law.**

10. Commissioner Danny Werfel serves as the head of the IRS in Washington D.C., and enforces the law challenged in this action. He is sued in his official capacity.

**Response: Admits.**

11. The United States Department of the Treasury is a cabinet level agency of the United States government, charged with enforcing the United States Tax Code.

**Response: Admits.**

12. Janet Yellen is the Secretary of the Treasury and is responsible for enforcement of the statute challenged in this action. She is sued in her official capacity.

**Response: Admits.**

## FACTUAL BACKGROUND

### The Regulatory Scheme

13. The Internal Revenue Code ("I.R.C.") is published at Title 26 of the United States Code. The IRS is responsible for the I.R.C.'s administration and enforcement, as well as the enforcement of other rules, regulations, policies, procedures, and practices it promulgates thereunder.

**Response: The allegations in this paragraph constitute legal argument to which no response is necessary. Avers that the pertinent statutes and regulations should be referred to for a full expression of their terms.**

> 14. 26 U.S.C. § 501(c) provides that various types of organizations are exempt from taxation. Buckeye is exempt from taxation under Section 501(c)(3).

**Response: Admits that Buckeye applied for and received an exemption from taxation under Section 501(c)(3). The remaining allegations in this paragraph constitute legal argument to which no response is necessary. Avers that the pertinent statutes and regulations should be referred to for a full expression of their terms.**

> 15. Pursuant to 26 U.S.C. § 6033(b), "Every organization described in section 501(c)(3) . . . shall furnish annually information, at such time and in such manner as the [Treasury] Secretary may by forms or regulations prescribe, setting forth . . . the total of the contributions and gifts received by it during the year, and the names and addresses of all substantial contributors."

**Response: The allegations in this paragraph constitute legal argument to which no response is necessary. Avers that the pertinent statutes and regulations should be referred to for a full expression of their terms.**

> 16. Federal law requires public charities to disclose as substantial contributors under § 6033(b)(5) any person who contributes an aggregate amount of more than $5,000 in the tax year being reported, "if such amount is more than 2 percent of the total contributions" received by the organization. 26 C.F.R. § 1.6033-2(a)(2)(iii)(A); see also 26 U.S.C. § 507(d)(2)(A).

**Response: The allegations in this paragraph constitute legal argument to which no response is necessary. Avers that the pertinent statutes and regulations should be referred to for a full expression of their terms.**

    17. Implementing Section 6033(b), the IRS requires that Section 501(c)(3) organizations like Buckeye file annually a Form 990, "Return of Organization Exempt From Income Tax" ("Form 990").

**Response: The allegations in this paragraph constitute legal argument to which no response is necessary.  Avers that the pertinent statutes and regulations should be referred to for a full expression of their terms.**

    18. Schedule B, "Schedule of Contributors," ("Schedule B") to Form 990 requires that Section 501(c)(3) organizations report, inter alia, the names and addresses of all persons who contribute the greater of $5,000 or 2 percent of the total contributions received by the organization during the tax year. Internal Revenue Serv., U.S. Dep't of the Treasury, OBN No. 1545-0047, Schedule of Contributors (2021), https://www.irs.gov/pub/irs-pdf/f990ezb.pdf.

**Response: Admits that certain 501(c)(3) organizations must report their substantial contributors on Schedule B to Form 990; denies that the reporting requirement originates from Schedule B to Form 990; avers that the reporting requirement was created by 26 U.S.C. § 6033(b)(5).  The remaining allegations in this paragraph constitute legal argument to which no response is necessary.  Avers that the pertinent statutes and regulations should be referred to for a full expression of their terms.**

    19. The IRS may seek civil penalties on any tax-exempt organization for failing to include complete or correct information on its return, including Schedule B to Form 990. 26 U.S.C. § 6652(c)(1). Such penalties can amount to $10,000 or 5% of the organization's gross receipts for the year. Id. § 6652(c)(1)(A).

**Response: The allegations in this paragraph constitute legal argument to which no response is necessary.  Avers that the pertinent**

**statutes and regulations should be referred to for a full expression of their terms.**

> 20. The IRS makes Schedule B filings of Section 501(c)(3) organizations available for public inspection upon request. 26 U.S.C. § 6104(d)(1). However, the IRS is required to keep the names and addresses of contributors confidential, see id. § 6104(d)(3)(A), and thus it must redact such information before publicly producing any Schedule B.

**Response: The allegations in this paragraph constitute legal argument to which no response is necessary. Avers that the pertinent statutes and regulations should be referred to for a full expression of their terms.**

> 21. Notwithstanding Section 6104(d)(3)(A)'s confidentiality requirement, the IRS has, either through hacking, inadvertence, or leaks by IRS employees, released various organizations' Schedule B contributor information on numerous occasions. In fact, as discussed further, infra, the IRS has conceded that it has difficulty maintaining the confidentiality of information provided on Schedule B.

**Response: Denies that the IRS has conceded that it has difficulty maintaining the confidentiality of information provided on Schedule B; admits that, according to the NJ Office of the Attorney General, "the IRS estimated last year that only 14 Schedule B forms have been inadvertently disclosed since 2010, from among at least 1.8 million filed with the agency (a rate of roughly seven millionths of one percent)." N.J. Office of the Attorney Gen. et al., Comment Letter on Guidance Under Section 6033 Regarding the Reporting Requirements of Exempt Organizations (Dec. 9, 2019) at 6, https://tinyurl.com/2m4dsm2z. The remaining allegations in this paragraph constitute legal argument to which no response is necessary.**

**Avers that the pertinent statutes and regulations should be referred to for a full expression of their terms.**

The IRS Abandons the Schedule B Requirements for Some Nonprofits

22. Although Section 6033(b) imposed the substantial contributor disclosure requirement on Section 501(c)(3) organizations, no statute imposed this requirement on other exempt organizations. In 1971, the IRS extended the contributor disclosure requirement to all exempt organizations through regulations governing the contents of Form 990. See Guidance Under 6033 Regarding the Reporting Requirements of Exempt Organizations, 85 Fed. Reg. at 103,31962.

**Response: The allegations in this paragraph constitute legal argument to which no response is necessary. Avers that the pertinent statutes and regulations should be referred to for a full expression of their terms.**

23. In May 2020, the Department of the Treasury promulgated a regulation eliminating the requirement that Section 501(c) organizations other than those governed by Section 501(c)(3) list the names and addresses of substantial contributors on Schedule B. Id. at 103,31966.

**Response: The allegations in this paragraph constitute legal argument to which no response is necessary. Avers that the pertinent statutes and regulations should be referred to for a full expression of their terms.**

24. The May 2020 regulation's preamble stated that "for the specific purpose of evaluating possible private benefit or inurement or other potential issues relating to qualification for exemption, the IRS can obtain sufficient information from other elements of the Form 990 or Form 990-EZ and can obtain the names and addresses of substantial contributors along with other information, upon examination as needed." Id. at 103,31963. The preamble stated further that eliminating the requirement that contributors' names be listed reduced the risk of "inadvertent disclosure," and thus protected against

"possible reprisals (such as harassment, threats of violence, or economic retribution)." Id. The Department of Treasury also stated that eliminating the requirement will "save tax-exempt organizations the administrative burdens of reporting and redacting" identifying information of substantial contributors. Id. at 103,31964.

**Response: The allegations in this paragraph constitute legal argument to which no response is necessary.  Avers that the pertinent statutes and regulations should be referred to for a full expression of their terms.**

### The IRS's Failure to Maintain the Confidentiality of Tax Filings, Including Form 990

25. In preparing Revenue Procedure 2018-38, the IRS stated that it was aware of at least 14 unauthorized disclosures of Form 990 information since 2010. N.J. Office of the Attorney Gen. et al., Comment Letter on Guidance Under Section 6033 Regarding the Reporting Requirements of Exempt Organizations (Dec. 9, 2019), https://tinyurl.com/2m4dsm2z.

**Response: Admits that the NJ Office of the Attorney General wrote, "The risk of inadvertent donor disclosures and the burden associated with redacting protected donor information are likewise insubstantial. According to its own internal records, the IRS estimated last year that only 14 Schedule B forms have been inadvertently disclosed since 2010, from among at least 1.8 million filed with the agency (a rate of roughly seven millionths of one percent)."  N.J. Office of the Attorney Gen. et al., Comment Letter on Guidance Under Section 6033 Regarding the Reporting Requirements of Exempt Organizations (Dec. 9, 2019) at 6, https://tinyurl.com/2m4dsm2z.  The remaining allegations in this paragraph constitute legal argument to which no response is necessary.**

**Avers that the pertinent document should be referred to for a full expression of their terms.**

> 26. In June 2021, the ProPublica organization demonstrated the insecurity of taxpayer data held by the IRS by publishing private income and tax payment information on its website. Paul Kiel et al., America's Highest Earners and Their Taxes Revealed, ProPublica (April 13, 2022), https://tinyurl.com/ProPublicaTaxes. That information remains available there as of December 2, 2022.

**Response: Admits that ProPublica published an article entitled "America's Highest Earners and Their Taxes Revealed," ProPublica (April 13, 2022). Denies that any Schedule B information was disclosed. The remaining allegations in this paragraph constitute legal argument to which no response is necessary. Avers that the pertinent document should be referred to for a full expression of its terms.**

> 27. A December 14, 2021, Inspector General report concluded that until the IRS takes steps to improve its IT security program deficiencies and fully implements all security program components in compliance with statutory standards for information security, taxpayer data will remain vulnerable to inappropriate and undetected use, modification, or disclosure. See Treasury Inspector Gen. for Tax Admin., U.S. Dep't of the Treasury, Report No. 2022-20-005, Annual Assessment of the IRS's Information Technology Program for Fiscal Year 2021 (Dec. 14, 2021), https://tinyurl.com/2pp2m9z4.

**Response: Admits that this language appears in the cited report but denies that it was specifically discussing Schedule B information.**

> 28. In September 2022 the IRS disclosed that in August 2022 it "accidentally posted [private] data from" 990-T forms. See Isaac O'Bannon, IRS Exposes Confidential Data on 120,000 Taxpayers on Open Website, CPA Practice Advisor, (Sep. 02, 2022), https://tinyurl.com/3pjzwxud. The information was available on the IRS's website "for about a year." Juliana Kim, The IRS Says it Mistakenly Made Public Data for About 120,000 Taxpayers, NPR, (Sep. 04, 2022), https://tinyurl.com/238zupsb.

**Response: Denies that the disclosure occurred in August of 2022 or that it involved Schedule B's; otherwise, admits.**

The IRS's Chilling of the Association and Assembly Rights Of Buckeye and Its Supporters

29. To further its mission, Buckeye relies on financial and other support from individuals, corporations, and foundations that share its commitment to individual liberty, free enterprise, personal responsibility, and limited government.

**Response: Lacks knowledge or information sufficient to form a belief about the truth of this allegation.**

30. Like all groups that advocate positions on controversial social issues, as well as supporters of such groups, Buckeye and its supporters prize their First Amendment freedom to associate and assemble privately. Their exercise of these rights to associate with each other in fulfilling social, political, and ideological goals would be significantly damaged if they could not maintain the privacy of their relationships, as Buckeye's supporters would risk retribution from some who oppose its mission.

**Response: Lacks knowledge or information sufficient to form a belief about the truth of this allegation.**

31. Buckeye's contributors are more reluctant to support it, as they fear reprisal from the IRS and others if the IRS misuses information showing their support of Buckeye, or if the IRS fails to secure such data.

**Response: Lacks knowledge or information sufficient to form a belief about the truth of this allegation.**

32. Buckeye has experienced this chilling effect firsthand. In 2013, shortly after the Ohio General Assembly relied upon Buckeye's arguments to reject expansion of the federal Medicaid program, Buckeye learned that it would be audited by the Cincinnati office of the IRS.

**Response: Lacks knowledge or information as to the motivation behind the Ohio General Assembly's decisionmaking process or when Buckeye first learned of the audit. Otherwise, denies.**

> 33. Fearing that this audit was politically motivated retaliation against Buckeye, contributors expressed concern that if their names appeared on Buckeye's Schedule B or other records provided to the IRS, they would also be subjected to retaliatory audits. To avoid potential retribution based on their association with Buckeye, numerous individuals began opting to make smaller, anonymous donations and foregoing a donation receipt, as well as their tax deduction.

**Response: Lacks knowledge or information sufficient to form a belief about the truth of this allegation.**

> 34. Upon information and belief, compelled disclosure of Buckeye's substantial contributors continues to chill privacy-conscious supporters' contributions to the organization.

**Response: Denies that § 6033(b)(5) compels disclosure; otherwise, lacks knowledge or information sufficient to form a belief about the truth of this allegation.**

> 35. Contributors' decisions to stop giving to Buckeye, or to give Buckeye smaller contributions than they otherwise would in order to avoid reporting to the IRS, effectively limits Buckeye's ability to speak, associate, and assemble with like-minded citizens.

**Response: Lacks knowledge or information sufficient to form a belief about the truth of this allegation.**

## COUNT ONE

## RIGHTS OF ASSOCIATION AND ASSEMBLY, U.S. CONST. AMEND. I

## 28 U.S.C. § 2201, ET SEQ.

36. Buckeye re-alleges and incorporates by reference paragraphs 1 through 35 of this Complaint as though fully set forth below.

**Response: The United States incorporates by reference its responses to paragraphs 1 through 35 of the Complaint.**

37. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), permits a plaintiff to challenge the constitutionality of a statute that is threatened to be enforced without the need to show damages or the imminent threat of prosecution. See Medimmune, Inc. v. Genetech, Inc., 549 U.S. 118, 129 (2007).

**Response: The allegations in this paragraph constitute legal argument to which no response is necessary. Avers that the pertinent statutes and regulations should be referred to for a full expression of their terms.**

38. As a nonprofit exempt from taxation under § 501(c)(3), Buckeye has consistently filed Schedule Bs with its Form 990s with the IRS. Buckeye has incurred and continues to incur administrative costs each year to comply with § 6033(b)(5) and its implementing regulations. Among other administrative costs, Buckeye must divert its resources, incurring compliance costs, to ensure that it accurately identifies who constitutes a substantial contributor each year and accurately submits the information to the IRS. This requires both gathering and analyzing the information and correctly completing Schedule B. Buckeye likewise incurs administrative costs from maintaining its Schedule Bs that display information about its substantial contributors and then having to redact that information on its Schedule B when required to produce it under 26 U.S.C. § 6104.

**Response: Denies that absent § 6033(b)(5), Buckeye would not have to identify substantial contributors or maintain such records; otherwise,**

**lacks knowledge or information sufficient to form a belief about the truth of this allegation.**

39. By compelling the disclosure of Buckeye's contributors, Defendants unlawfully and substantially deprive Buckeye and its supporters of the free association and assembly rights secured by the First Amendment to the United States Constitution.

**Response: Denies.**

40. Section 6033(b)(5)'s compelled disclosure regime is not substantially related to any sufficiently important government interest. No substantial relation exists between the wholesale disclosure of substantial contributors through Schedule B and the government's interest in enforcing compliance with the tax code. Moreover, the government has readily available, more narrowly tailored alternatives to upfront collection of all names and addresses of substantial contributors.

**Response: Denies.**

41. The compelled disclosure of Buckeye's contributors on Schedule B does not survive exacting scrutiny.

**Response: Denies.**

42. The compelled disclosure of Buckeye's substantial contributors on Schedule B is unconstitutional under the First Amendment, both facially and as applied against Buckeye.

**Response: Denies.**

43. Buckeye is entitled to a declaratory judgment and injunctive relief prohibiting the IRS from collecting the names and addresses of its contributors pursuant to Section 6033(b).

**Response: Denies.**

The remainder of the Amended Complaint constitutes a prayer for relief to which no response is required. The United States denies all allegations not

otherwise specifically admitted, qualified, or denied, and respectfully requests that the United States be awarded costs and such other relief as appropriate.

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General

*/s/ Joseph A. Sergi*
JOSEPH A. SERGI
Senior Litigation Counsel, Tax Division

MARY A. STALLINGS
ARIE M. RUBENSTEIN
Trial Attorneys, Tax Division

U.S. Department of Justice
P.O. Box 55
Washington, D.C. 20044
202-305-0868 (v)
202-514-5238 (f)
joseph.a.sergi@usdoj.gov